WR-80,559-02
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/23/2015 4:10:56 PM
Accepted 1/23/2015 4:24:29 PM
ABEL ACOSTA
CLERK

NO. WR-80,559-02

RECEIVED
COURT OF CRIMINAL APPEALS
1/23/2015
ABEL ACOSTA, CLERK

IN THE COURT OF CRIMINAL APPEALS
STATE OF TEXAS

RELATING TO CAUSE N0. 10-DCR-054233
FORT BEND COUNTY, TEXAS

---

**IN RE JAMES ALBERT TURNER**

**VS.**

**HONORABLE BRADY G. ELLIOTT, JUDGE PRESIDING
268TH DISTRICT COURT, FORT BEND, COUNTY**

---

**STATE'S RESPONSE TO THE PETITION
PETITION FOR WRIT OF MANDAMUS AND PROHIBITION**

---

JOHN F. HEALEY, JR.
District Attorney, 268th Judicial District
Fort Bend County, Texas

Fred M. Felcman
First Assistant District Attorney

Gail Kikawa McConnell
Assistant District Attorney
SBOT #11395400
Fort Bend County, Texas
301 Jackson Street, Room 101
Richmond, Texas  77469
(281) 341-4460 / (281) 238-3340 (fax)
Gail.McConnell@fortbendcountytx.gov

Counsel for the State of Texas,
Real Party in Interest

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 52.4, the State supplements relator's list of counsel

as follows:

For The State of Texas, Real Party in Interest

Gail Kikawa McConnell                    Assistant District Attorney
SBOT # 11395400
301 Jackson Street, Room 101
Richmond, Texas 77469

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF COMPETENT EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

APPENDIX A:     State's answer to Turner's motion to address current competency

# INDEX OF AUTHORITIES

**CASES**                                                         **PAGE**

Barber v. State,
    757 S.W.2d 359 (Tex. Crim. App. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Greene v. State,
    264 S.W.3d 271, 272 (Tex. App.--San Antonio 2008, pet. ref'd). . . . . . . . . 5

Huggins v. Crews,
    2014 WL 5026425 (Fla. Oct. 9, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

Moore v. Superior Court,
    237 P.3d 530 (Calif. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ryder v. State,
    83 P.3d 856 (Okla. Crim. App.), *cert. denied* 543 U.S. 886 (2004).. . . . . . 4,5

State v. McRae,
    594 S.E.2d 71 (N.C. Ct. App.),
    *pet. denied* 599 S.E.2d 911 (N.C. 2004). . . . . . . . . . . . . . . . . . . . . . . . 4,5

Turner v. State,
    422 S.W.3d 676 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . . . . . . . 1-2

## STATUTES AND RULES

TEXAS CODE OF CRIMINAL PROCEDURE
    Article 46B.002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Article 46B.005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

NO. WR-80,559-02
IN THE COURT OF CRIMINAL APPEALS
STATE OF TEXAS

RELATING TO CAUSE N0. 10-DCR-054233
FORT BEND COUNTY, TEXAS

---

**IN RE JAMES ALBERT TURNER**

**VS.**

**HONORABLE BRADY G. ELLIOTT, JUDGE PRESIDING
268TH DISTRICT COURT, FORT BEND, COUNTY**

---

**STATE'S RESPONSE TO THE PETITION
PETITION FOR WRIT OF MANDAMUS AND PROHIBITION**

---

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

**STATEMENT OF THE CASE**

This is a death penalty case. On October 30, 2013, this Court remanded this case, instructing:

On remand, the trial court shall first determine whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations. Should the trial court deem a retrospective competency trial to be feasible, it shall proceed to conduct such a trial in accordance with Chapter 46B, Subchapter C, of the Code of Criminal Procedure. Regardless of whether the trial court deems a retrospective competency trial to be feasible, the record of the proceedings on remand shall then

1

be returned to this Court for reinstatement of the appeal.

*Turner v. State*, 422 S.W.3d 676, 696-97 (Tex. Crim. App. 2013) (footnotes omitted).

On April 2, 2014, this Court denied the State's motion for rehearing and issued its mandate.

## STATEMENT OF FACTS

On May 30, 2014, the trial court held a hearing on the feasibility of a retrospective competency trial. [Pet. Ex. B, RR-5/30/14 at 1]  At that hearing, for the first time, Turner presented the Court with *Greene v. State*, 264 S.W.3d 271, 272 (Tex. App.--San Antonio 2008, pet. ref'd), holding that a defendant must be currently competent to stand a retrospective competency trial.  [Pet. Ex. B, RR-5/30/14 at 6] In an abundance of caution, the trial court invited Turner and the State to each submit the name of a psychiatrist to evaluate Turner for contemporary competency. [Pet. Ex. B, RR-5/30/14 at 16, 17-18]

The trial court appointed Dr. Mary Alice Conroy a psychologist on the recommendation of Appellant, and Dr. Mark Moeller, a psychiatrist on the recommendation of the State.  Turner refused to see both doctors.  [Appendix A, being a copy of the State's answer to Turner's motion to determine his current competency, Exhibits A & B]

The trial court found that a retrospective competency trial is feasible and set

2

this cause for trial on December 1, 2014.

On December 1, 2014, the Court reset the retrospective hearing to January 26, 2015. On January 16, 2015, Turner re-urged his motion to determine current competency, which the trial court denied after reaffirming its determination that the retrospective competency trial was feasible. [App-Ex E at 1, 15-16]

## ARGUMENT

In two issues, Relator asserts the trial court "abused its discretion" in determining a retrospective competency trial without due process. The crux of both issues is that Relator believes he is entitled to a jury trial on his contemporary competency. Relator omits the State's answer to his motion in the trial court. The State files this response to supplement the record with the State's answer to Turner's motion, which shows that the trial court did not abuse its discretion in proceeding without a jury trial on his contemporary competency. *See* Appendix A, being a copy of the answer.

Further, Relator fails to show this Court that he has no adequate remedy in the appeal of the jury's determination of his retrospective competency. *See Barber v. State*, 757 S.W.2d 359 (Tex. Crim. App. 1988). The issue of whether a contemporary competency must be determined before a retrospective competency trial is held has been determined by courts in other states on appeal from the retrospective

3

competency trial.  *See, Ryder v. State*, 83 P.3d 856, 870-71 (Okla. Crim. App.), *cert. denied* 543 U.S. 886 (2004) (death penalty case); and *State v. McRae*, 594 S.E.2d 71, 79 (N.C. Ct. App.), *pet. denied* 599 S.E.2d 911 (N.C. 2004).  *See also, Huggins v. Crews*, 2014 WL 5026425, at *4 (Fla. Oct. 9, 2014) (on appeal of the denial of post conviction relief in a death penalty case, deciding that the trial court did not abuse its discretion in failing to hold competency proceedings prior to the evidentiary hearing on whether Huggins was competent to proceed with post conviction matters).

Relator has an adequate remedy on appeal of the retrospective competency trial.  Relator's petition should be denied.

Relator relies on this Court's opinion on direct appeal, remanding this case for a competency trial in part because the trial court appointed an expert to evaluate Turner for competency to stand trial:

> In any event, here, at least as of May 20, 2011, when voir dire was interrupted for the hearing at which Dr. Almeida testified, the trial court was obviously persuaded that a *bona fide* doubt *did* exist as to the appellant's competency.

*Turner*, 422 S.W.3d 676.

As shown in the reporter's record of the May 16, 2014, hearing on the feasibility of a retrospective competency hearing, the trial court never doubted that Turner was competent to stand trial, but had appointed Dr. Almeida and heard her

4

testimony to make a full record.  [App. A, Ex A at 17-18]

This case is again in the same posture as at trial.  The trial court again appointed experts to evaluate Turner for contemporary competency at the urging of counsel on the questionable authority of *Greene v. State*, 264 S.W.3d 271, 272 (Tex. App.--San Antonio 2008, pet. ref'd).  *Greene* cited no authority in requiring contemporary competency for a retrospective competency trial.  *Greene* is the only authority cited by Turner to require a trial court to determine contemporary competency for a retrospective competency trial, and the State has found no other case to so require.

Rather, the State has found contrary authority holding that no finding of contemporary competency is required for a retrospective competency trial.  *See, Ryder v. State*, 83 P.3d 856, 870-71 (Okla. Crim. App.), *cert. denied* 543 U.S. 886 (2004) (death penalty case); and *State v. McRae*, 594 S.E.2d 71, 79 (N.C. Ct. App.), *pet. denied* 599 S.E.2d 911 (N.C. 2004).  *See also, Huggins v. Crews*, 2014 WL 5026425, at * (Fla. Oct. 9, 2014)*. See also, Moore v. Superior Court*, 237 P.3d 530, 543 (Calif. 2010) (holding that although the Sexually Violent Predators Act provides "the person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings," the person does not have a due process competence right in part because such "could prevent an SVP determination from

5

being made *at all*").

The State's petition for discretionary review in *Greene* did not raise the question of whether contemporary competency was required for a retrospective competency trial. [App. A, Ex F] Whether the Court would require contemporary competency is a question that may be taken by Turner on appeal.

The trial court appointed, "in an abundance of caution" to give the Court a full record, two experts to evaluate Turner. Turner refused to be evaluated for competency. That is his choice. The presumption of competency should prevail. Tex. Code Crim. Proc. art. 46B.002(b) (West 2014). Turner tendered no evidence, other than the arguments of counsel, to show otherwise.

Article 46B.005 requires "that evidence exists to support a finding of incompetency," before a trial is required. Tex. Code Crim. Proc. art. 46B.005(b) (West 2014). That phrase should not require a trial just because a trial court appointed experts "in an abundance of caution" to assure the court that it did not miss what trained psychiatric experts might see. Given the presumption of competency, the bar on "evidence exists to support a finding of incompetency" should not be set so low that any argument of incompetency by defense attorneys--without any valid expert finding of incompetency, without any prior history of mental illness, without any report by family members or friends of mental illness, without any showing of

6

brain injury--should require a trial on competency.

## PRAYER

Real party in interest, The State of Texas, prays that the petition for Writs of Mandamus and Prohibition be denied.

Respectfully submitted,

John F. Healey, Jr.
SBOT 09328300
District Attorney, 268th Judicial District
Fort Bend County, Texas

/s/ Fred M. Felcman
SBOT # 06881500
First Assistant District Attorney

/s/ Gail Kikawa McConnell
SBOT # 11395400
Assistant District Attorney
301 Jackson Street, Room 101
Richmond, Texas 77469
(281) 341-4460 /(281) 238-3340 (fax)
Gail.McConnell@fortbendcountytx.gov

7

## CERTIFICATE OF COMPETENT EVIDENCE

I hereby certify that I have reviewed the foregoing petition and every factual statement is supported by competent evidence included in the appendix or record.

/s/ Fred M. Felcman
Fred M. Felcman


## CERTIFICATE OF COMPLIANCE

I hereby certify that the State's Response to the petition for writ of mandamus, in total contains 1,878 words as counted by WordPerfect 12, which is less than the 15,000 word limit for a response to an original petition. Tex. R. App. 9.4(i)(2)(B).

/s/ Gail Kikawa McConnell
Gail Kikawa McConnell


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the State's response was served by electronic mail on January 23, 2015, on Robert Morrow and Amy Martin, attorneys for Relator, and on Hon. Brady G. Elliott, Judge, 268th District Court, Respondent.

/s/ Gail Kikawa McConnell
Gail Kikawa McConnell

8

# APPENDIX A



No. 10-DCR-054233

| STATE OF TEXAS | § | IN THE 268TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| ALBERT JAMES TURNER | § | FORT BEND COUNTY, TEXAS |

## STATE'S ANSWER IN OPPOSITION TO TURNER'S MOTION TO ADDRESS HIS CONTEMPORARY COMPETENCY

To the Honorable Judge of the 268th District Court:

COMES NOW the State of Texas, by and through her District Attorney, 268th Judicial District, Fort Bend County, and files this answer in opposition to Turner's motion to address his contemporary competency, and urges the Court to deny the motion and hold the retroactive competency hearing that it found feasible. In support thereof, the State shows:

### Procedural History

On May 31, 2011, a jury convicted the defendant of capital murder. On June 7, 2011, the jury answered the special issues yes and no, and the trial court sentenced the defendant to death as a matter of law. The defendant filed a motion for new trial, that this Court heard on August 8, 2011, and denied.

On October 30, 2013, the Court of Criminal Appeals remanded this case, instructing:

FILED

2015 JAN 15 AM 11: 16

*Annie Rebecca Elliott*
CLERK DISTRICT COURT
FORT BEND CO., TX

1

On remand, the trial court shall first determine whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations. Should the trial court deem a retrospective competency trial to be feasible, it shall proceed to conduct such a trial in accordance with Chapter 46B, Subchapter C, of the Code of Criminal Procedure. Regardless of whether the trial court deems a retrospective competency trial to be feasible, the record of the proceedings on remand shall then be returned to this Court for reinstatement of the appeal.

*Turner v. State*, 422 S.W.3d 676, 696-97 (Tex. Crim. App. 2013) (footnotes omitted).

On April 2, 2014, the Court of Criminal Appeals denied the State's motion for rehearing and issued its mandate.

On May 30, 2014, this Court held a hearing on the feasibility of a retrospective competency trial. [RR-5/30/14 at 1] The reporter's record of the hearing is attached hereto as Exhibit A. At that hearing, Turner presented the Court with *Greene v. State*, 264 S.W.3d 271, 272 (Tex. App.--San Antonio 2008, pet. ref'd), holding that a defendant must be currently competent to stand a retrospective competency trial. [RR-5/30/14 at 6] In an abundance of caution, this Court invited Turner and the State to each submit the name of a psychiatrist to evaluate Turner for contemporary competency. [RR-5/30/14 at 16, 17-18]

The Court appointed Dr. Mary Alice Conroy a psychologist on the recommendation of Appellant. Dr. Conroy attempted to evaluate Turner on August 29, 2014, but Turner refused her visit. Exhibit B, being a copy of Dr. Conroy's letter report.

2

This Court appointed Dr. Mark Moeller, a psychiatrist on the recommendation of the State. Dr. Moeller attempted to evaluate Turner on September 18, 2014, but Turner refused his visit. Exhibit C, being a copy of Dr. Moeller's letter report.

This Court found that a retrospective competency trial is feasible and set this cause for trial on December 1, 2014.

At the urging of Turner, and in the hopes that Turner would submit to an evaluation if housed at the Fort Bend County Jail, the Court bench warranted Turner two weeks before the trial setting. Turner was admitted to the Fort Bend County Jail on November 3, 2014. The State believes that Turner again refused to be evaluated at the request of his attorneys, this time by Dr. David Self, a psychiatrist.

On December 1, 2014, the Court reset the retrospective hearing to January 26, 2015, and Turner was returned to the Polunsky Unit on December 12, 2014.

### A retrospective competency trial is feasible

In determining whether a retrospective competency trial is feasible, the Court should consider the following factors:

1. The passage of time;

2. The "quality and quantity" of evidence that would be available if the trial court were to conduct such a retrospective inquiry, including

    a. the present recollection of expert witnesses who testified at the original hearing;

    b. statements made by the defendant at trial,

c.     the availability of contemporaneous medical and psychiatric evidence,

d.     the availability of transcript or video record of the relevant proceedings,

e.     the availability of witnesses, both expert and nonexpert, who could offer testimony regarding the defendant's mental status at the time of trial

3.     The ability of the judge and jury to observe the subject of their inquiry.

*Brandon v. State*, 599 S.W.2d 567, 573 (Tex. Crim. App.1979),[1] *vacated and remanded on other grounds* 453 U.S. 902 (1981) (citing *Pate v. Robinson*, 383 U.S. 375 (1966)); George E. Dix and John M. Schmolesky, 43 Tex. Prac., Criminal Practice and Procedure § 31:81 (3d ed.); Francis C. Amendola, et. al., 22A C.J.S. Criminal Law § 791, Retrospective Hearings (March 2014).

"No single factor is determinative, and the issue should be decided on a case-by-case basis." 22A C.J.S. § 791.

Here, the passage of time is not a significant factor. Trial counsel are the source of the opinion that Turner was incompetent to stand trial. Pat McCann and Tyrone Moncriffe are available to testify to their observations and interactions with Applicant.

Dr. Connie Almeida, who attempted to examine Turner during jury selection,

---

[1]     *See also* the cases collected by the court providing "ample authority that the requirements of due process may be fully met as it concerns the appellant here if he were not granted a trial to determine, after the fact, whether he was competent at the time he was tried and convicted." *Brandon*, 599 S.W.2d at 573.

4

is available to testify about her half hour encounter with Turner.

Turner took the stand, and the transcriptions of his testimony and the many interactions between Turner and the Court during the course of jury selection and the trial are available.

The records of the Fort Bend County Jail reflect Turner's physical and mental health during jury selection and the trial.

Most importantly, unlike *Pate*, during the course of voir dire and the end of the trial, six jail visits by Turner's family and a friend[2] were video recorded. The competency jury will be able to observe the affect and demeanor of Turner while interacting with those he is comfortable with and trusts. A listing of these visits is attached hereto as Exhibit D. Thirty-nine telephone calls by Turner were also audio recorded, a listing of which is attached hereto as Exhibit E.

The quality and quantity of evidence showing Turner's competence to stand trial is good, substantial, and readily available.

***Other than Greene, Turner cites to no other authority requiring a defendant to be currently competent at a retrospective competency trial.***

Turner's sole authority for requiring his contemporary competency to stand a retrospective competency trial is *Greene v. State*, 264 S.W.3d 271, 272 (Tex.App.--

---

[2] Willie Bradford, who testified at trial and was a co-worker of Turner's at the Jester IV unit.

5

San Antonio 2008, pet. ref'd[3]).  [Mtn at ¶ 4; Brief at 2]  The State has found no other case supporting a requirement of contemporary competency to stand a retrospective competency trial.

Rather, the State has found two cases holding that a defendant has no right to be competent at a retrospective competency hearing, *Ryder v. State*, 83 P.3d 856, 870-71 (Okla. Crim. App.), *cert. denied* 543 U.S. 886 (2004) (death penalty case); and *State v. McRae*, 594 S.E.2d 71, 79 (N.C. Ct. App.), *pet. denied* 599 S.E.2d 911 (N.C. 2004).

On appeal following a remand for a retrospective competency determination, Ryder claimed that "the trial court erred in failing to hold a hearing to determine his contemporary competency prior to proceeding with the retrospective competency determination."  *Ryder*, 83 P.3d at 870.  Ryder argued that the retrospective competency hearing was a "criminal proceeding," and as such, the hearing should have been "suspended pending his contemporary competency."  *Id.*

The Oklahoma Court of Criminal Appeals noted that "[a] competency hearing is a special proceeding for the purpose of ensuring full compliance with due process

---

[3]  The State has obtained a copy of the petition for discretionary review. A copy of the list of grounds for review from that petition is attached hereto as Exhibit F.  The grounds for review focused on whether the trial court conducted an "informal inquiry," not the court of appeals's requirement of contemporary competency, which is unsupported by authority.

requirements, but itself is not a criminal prosecution." *Ryder*, 83 P.3d at 870 (quoting *Rogers v. Lansdown*, 829 P.2d 687, 688 (Okla. Crim. App. 1992)). The court summarily held, "As the retrospective competency hearing in this case occurred after judgment and sentencing, it is not a criminal proceeding that must be suspended pending determination of contemporary competency." *Ryder*, 83 P.3d at 871.

McRae appealed a retrospective competency determination and asserted that "the trial court erred when it found that defendant was competent to proceed at the 7 June 2001 retrospective competency hearing," and in proceeding without the presence of the defendant in violation of his statutory and constitutional rights. *Id.*, 594 S.E.2d at 79. The court noted that the purpose of the competency statutes "is to determine whether defendant is or was capable to stand trial." *Id.* "Our Supreme Court has held that these hearings '[do] not implicate defendant's confrontation rights and [do] not have a substantial relation to his opportunity to defend.'" *Id.* (quoting *State v. Davis*, 506 S.E.2d 455, 466 (N.C. 1998), *cert. denied* 526 U.S. 1161 (1999)). "Therefore, whether or not defendant was competent at the 7 June 2001 retrospective competency hearing does not implicate his constitutional or statutory rights." *McRae*, 594 S.E.2d at 79.

The purpose of a retrospective jury trial on competency is to determine whether a defendant was competent to stand trial. It is not to determine the defendant's guilt or innocence. More importantly, if Turner had been incompetent to stand trial, and

7

a jury trial on competency had been held at the time of trial, Turner would have been unable to assist counsel. It is nonsensical to require Turner to be competent to assist counsel on his retrospective incompetency, if he had been incompetent during trial. It is also nonsensical to require Turner to be competent to assist counsel in finding him incompetent at the time of trial, when as shown in his phone calls to his sister Juanita Dawsey, Turner vehemently objects to such a finding. Counsels' efforts to seek guardianship over Turner due to his alleged mental incapacity and to divest Turner of his right to confront his children, who provide the only evidence of Turner's identification as the actor, form the basis for Turner's animosity towards counsel and his alleged inability to rationally assist in his defense.

While a defendant has due process and fair trial constitutional rights to be present at a competency hearing, such are to ensure the accuracy of the jury's determination on competency. *Sturgis v. Goldsmith*, 796 F.2d 1103, 1108-09 (9th Cir. 1986) (defendant found incompetent when present at trial and competent when not), *accord United State v. Barfield*, 969 F.2d 1554, 1556 (4th Cir. 1992). Thus, if Turner is presently incompetent, as his attorneys assert, his incompetency should aid his attorneys' case before the jury.

By statute, certain trial-type rights must be afforded at a competency hearing. *See* Tex. Code Crim. Proc. art. 46B.006 ("defendant is entitled to representation by counsel at any court-ordered competency evaluation and during any proceeding on

8

competency"); Tex. Code Crim. Proc. art. 46B.008 (Texas Rules of Evidence apply to a competency trial); *see also e.g.*, *United States v. Jent*, No. 6: 13–26–DCR–02, 2014 WL 320582, *2 (E.D.Ky. Jan 29, 2014) (18 U.S.C. § 4247(d) governs the competency hearing, and assures certain trial-type rights, including the right to counsel, the right to confront and cross-examine witnesses, and the right to participate in the hearing). However, contemporary competency, being the subject and sole issue to be resolved by the trial cannot be one of them. *See Moore v. Superior Court*, 237 P.3d 530, 543 (Calif. 2010) (holding that although the Sexually Violent Predators Act provides "the person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings," the person does not have a due process competence right in part because such "could prevent an SVP determination from being made *at all*").

As stated by the California Supreme Court, feasibility in the context of whether a retrospective determination is indeed feasible "means the availability of sufficient evidence to reliably determine the defendant's mental competence when tried earlier." *People v. Ary*, 246 P.3d 322, 439 (Calif. 2011). The defendant will then be "in a position comparable to the one he would have been placed in prior to the original trial." *Id.* at 440 (quoting *Tate v. State*, 896 P.2d 1182, 1188 (Okla. Crim. App. 1995)). Contemporary competency is not a pertinent factor to consider in determining whether a retrospective competency trial is feasible.

9

***The evidence at the retrospective competency trial should be limited by the timeframe of Turner's trial.***

Turner's brief in support of his motion to determine his contemporary competence devotes six pages of text to alleged evidence (the motion and brief are not sworn or supported by affidavit) of Turner's supposed continuing and worsening incompetency. However, TDCJ records and contraband found in Turner's cell on death row reflect that Turner does as he chooses. Turner is currently mentally capable of interacting with other inmates (fishline to send and receive items between cells, a chess board, modified radio to receive television channels, managing a fantasy football team), reading (including Handbook for Jailhouse Lawyers), and caring for his own needs (commissary records and requests for money to his family). A copy of selected photos made on December 16, 2014, TDCJ commissary records, and a letter to his mother for money are attached hereto as Exhibit G. Also, Turner is perfectly capable of cooperating with authorities if he wants to. *See* Exhibit H, being the affidavit of Ben Simpson relating Turner's decision to complete his registration with the Fort Bend County jail phone system after his phone privileges were taken away for failing to complete the registration process.

Regardless, the relevant inquiry for the jury at this retrospective competency trial is whether Turner was competent to stand trial. The evidence should be limited to that showing Turner's competency during voir dire and his trial from April 18

10

through June 7, 2011.

WHEREFORE, PREMISES CONSIDERED, the State urges the Court to reaffirm its order that a competency hearing is feasible and to hold the jury trial as scheduled to begin on January 26, 2015.

Respectfully submitted,

John F. Healey, Jr.
SBOT 09328300
District Attorney, 268th Judicial District
Fort Bend County, Texas

Fred M. Felcman
SBOT # 06881500
First Assistant District Attorney

Gail Kikawa McConnell
SBOT # 11395400
Assistant District Attorney
301 Jackson Street, Room 101
Richmond, Texas 77469
(281) 341-4460 / (281) 238-3340 (fax)
Gail.McConnell@co.fort-bend.tx.us

## CERTIFICATE OF SERVICE

I certify that the foregoing State's answer was served by email on Mr. Robert Morrow, Attorney for Turner, <ramorrow@gmail.com. and on James Rytting, <james@hilderlaw.com, habeas counsel on January 15, 2015.

Gail Kikawa McConnell

11

No. 10-DCR-054233

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 268TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| ALBERT JAMES TURNER | § | FORT BEND COUNTY, TEXAS |

## EXHIBIT LIST

Exhibit A: Reporter's record, May 30, 2014, hearing regarding the feasibility of a retrospective competency hearing

Exhibit B: Letter report of Dr. Mary Alice Conroy, psychologist

Exhibit C: Letter report of Dr. Mark Moeller, psychiatrist

Exhibit D: List of video recorded visits

Exhibit E: List of audio recorded jail phone calls

Exhibit F: Issues for review from the petition filed by the State in *Greene*

Exhibit G: Photos and TDCJ records, letter to family

Exhibit H: Affidavit of Ben Simpson

# Exhibit A

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. 10-DCR-054233

| THE STATE OF TEXAS | ) IN THE DISTRICT COURT |
| | ) |
| vs. | ) FORT BEND COUNTY, TEXAS |
| | ) |
| ALBERT JAMES TURNER | ) 268TH JUDICIAL DISTRICT |

---

## DETERMINATION OF RETROSPECTIVE COMPETENCY

---

On May 30, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Brady G. Elliott, Judge Presiding, held in Richmond, Fort Bend County, Texas.

Proceedings reported by computerized stenotype machine.

APPEARANCES

MR. FRED FELCMAN
MS. GAIL MCCONNELL
MS. LESLEIGH SAUNDERS
FORT BEND COUNTY DISTRICT ATTORNEY'S OFFICE
301 JACKSON
RICHMOND, TEXAS 77469
Counsel for The State of Texas

MR. RICHARD A. MORROW
SBOT NO. 14542400
LOCKE LORD, L.L.P.
600 CONGRESS AVENUE, SUITE 2200
AUSTIN, TEXAS 78701
Telephone: 512.305.4709
Counsel for Defendant

MR. JAMES RYTTING
SBOT NO. 24002883
Hilder & Associates
819 Lovett Boulevard
Houston, Texas 77006
Telephone: 713.655.9111
Writ Counsel for Defendant

VOLUME 1

DETERMINATION OF RETROSPECTIVE COMPETENCY

May 30, 2014

PAGE VOL.

Proceedings Commence ............................4    1

Announcements ..................................4    1

Ruling of the Court ...........................16    1

Reporter's Certificate ........................19    1

## PROCEEDINGS

THE COURT: This is in the matter of The State of Texas vs. Albert James Turner, No. 54233.

If you'll make your announcements, please.

MR. FELCMAN: Fred Felcman for The State of Texas, Judge.

MR. MORROW: Robert Morrow for the defendant, Mr. Turner; and Aisha Khan is with me this morning, your Honor.

THE COURT: Mr. Morrow, I noticed in the files, the papers in the file, that you've entered your appearance as lead attorney for Mr. Turner at this stage.

MR. MORROW: I have, your Honor. I've openly discussed that.

THE COURT: Okay. Very good.

The purpose of this hearing is to determine the necessity of a -- or the necessity and feasibility of a retrospective competency hearing, and you've been joined by counsel for -- who's handling the writ.

Do you want to make your announcements, if you're going to participate?

MR. RYTTING: Yes, James Rytting here for Mr. Albert James Turner.

THE COURT: All right. The way this has come down, as I've read the opinion of the Court of Criminal Appeals, it almost throws this on my lap to determine the feasibility; and I am interpreting that to ask for help from counsel who's best positioned to do so to argue the necessity -- Well, not necessity. The Court of Criminal Appeals has already ordered the necessity of it, but the feasibility and the method by which we will accomplish that task, so I -- Since both of you are basically in the same position, I believe, I don't know who's the lead in this or not; but using normal procedure, since it's the burden of the defendant to raise competency, I believe that burden still rests with the defense, so I'll proceed with you and Mr. Morrow and let you lead off on this issue.

MR. MORROW: Thank you, Judge.

Judge, I did want to mention to the Court that Ms. Amy Martin has put just a tremendous amount of work in this case and would be here with me this morning, but she lost her dad about a week ago, and the funeral is actually right now.

THE COURT: I'm sorry to hear that.

MR. MORROW: Yes, sir, and I apologize. And, of course, she, except for that extraordinary circumstance, would be here so -- and I hope she will be

joining us later on in the litigation as we continue.

So, Judge, we believe that there's a threshold finding that the Court has to deal with which is whether, as you mentioned, there's the feasibility of having this hearing; and we think before that, we're going to ask the Court and we prepared a motion this morning to let us have an expert to determine whether Mr. Turner is competent now to proceed.

And the Green case, which I'll share with the Court, with the prosecutors, 264 S.W.3d 261, out of the San Antonio Court of Appeals, dealt with a situation that's similar to ours, we believe, where the defendant in that case was incompetent, had been incompetent; and in the case, they were determining whether or not they could do a retrospective competency hearing; and the Court in that case found that because of the continued incompetency of the defendant, it was not practical to do so.

So we believe the best way to proceed right now would be to let us have an expert examine Mr. Turner for his present competency and then put that in front of the Court so you can have that to consider before deciding whether you could go forward; that way, we'd have an up-to-date, you know, opinion about his state, and you'd be able to make a better decision about

whether it's possible to have this hearing that the Court has asked you to consider.

THE COURT: Mr. Felcman, your response.

MR. FELCMAN: I appreciate Mr. Morrow's giving me the case; I really do.

This is a very unusual circumstance, okay. We have a 5/4 decision. The five, in reaching a decision in this, use a nonsecular reasoning, circular logic, sort of bypass abusive discretion, and then ignore certain portions of the law; and then they tell you, make a decision whether you can have a retroactive hearing on this matter. Never do they -- Never do they put in the -- in their findings that you will be unable to make a retroactive hearing.

Now, I bring that to the attention of the Court because the five people who wrote this should know what the circumstances are. In this particular case, you've already had several experts look at the defendant and all said he was competent. Or they'd say they couldn't determine it because he didn't cooperate with them.

THE COURT: I think that's a more accurate rendition of their findings is that they're unable to make a decision because Mr. Turner will not cooperate with the process.

MR. FELCMAN: Actually, some of them did find him competent. But I understand; you're correct.

THE COURT: But that is a finding that we've always followed in the law of competency that if the person won't cooperate and won't participate, they are to be determined to be competent.

MR. FELCMAN: That's correct.

THE COURT: Which is -- I guess that's what's got in my crawl about this whole matter is that following that rule of law, I get this returned to me.

MR. FELCMAN: And actually if you read it over, they actually go ahead and say: "Because the doctor couldn't decide whether he's competent, we must presume he's incompetent." Therefore, I disagree with the opinion wholeheartedly; but that doesn't let you off the hook.

THE COURT: Well, did they find that if he didn't participate, then he is incompetent?

MR. FELCMAN: They actually have a section in there because the doctor couldn't have enough information to determine whether he was competent or not, there's not evidence that he is competent; therefore, they sort of switched the burden of proof at one point in time in the opinions.

THE COURT: So they have changed the whole

body of law --

MR. FELCMAN: They've changed the standard.

But that's not Mr. Morrow's fault, whatever. He's just in here arguing his point. I believe that the feasibility of this is quite easily done. The only evidence you will actually have on this matter is --

THE COURT: Well, let's talk about his request first that he -- we need to bring him down and determine his competency presently.

MR. FELCMAN: That's correct, Judge. And the cases he cited is actually correct. He cites you correctly. It doesn't give any specifics on it.

MR. MORROW: May I approach?

MR. FELCMAN: Yeah, sure. Give it to him.

He doesn't give you any specifics about what was the scenario on this one. It doesn't say -- I don't know if it says anything about the reason we're having this is because he wasn't cooperating with his counsel.

Did it say anything like that in there specifically?

MR. MORROW: No. No, I don't think it addresses cooperation that I remember.

MR. FELCMAN: And that's what I think is the key on this particular case. We're just here because the defendant doesn't want to cooperate, all right. And even in the opinion, they say he meets it. We all know nobody's argued that he doesn't have a rational understanding of what's going on here. All we're dealing with here is his ability to cooperate with defense counsel. That's the only issue we're really dealing with here. This case could be pertinent. On the other hand, I don't think it is under the scenario that we have right now.

If he has changed, if something comes up where the -- I guess you could do it if the psychiatrist comes up and he has now got a mental illness, maybe that would be something you would need to address; but I don't think we have -- Do we have anything at all on the record that he's got a new mental illness, or is it basically the same thing as always, he doesn't want to cooperate with anybody?

MR. MORROW: No, I think even Dr. Alexrad and some of the other doctors mentioned a mental illness; and if I could address Fred's point briefly, Judge, we argue really that this vexation that he won't cooperate is really the best evidence of his mental illness; and the trial itself was so -- Judge, you

observed that that was so vividly illustrated. This isn't someone that's just, you know, hardheaded. This is someone whose mental illness, whose fixed delusion that we are all conspiring to kill him has kept him from cooperating.

And when you look at the T.D.C. records, it's consistent throughout his records. He won't sign things; he won't participate in any way, and it's -- That's the mental illness that's expressing itself that makes him incompetent, so while it's extremely frustrating to deal with him, that is his illness, so we ask that we be able to bring that more forcibly to the Court and more vividly to the Court so that you could decide whether you can have this hearing or not.

THE COURT: Okay. This is part of what's bothering me about -- The defense has made the request that he be brought in to determine current competency several times.

MR. MORROW: Yes, sir.

THE COURT: But how does this relate to the Trial on the Merits of the case which is what brought us to this point? I made an explicit finding during the trial that he was competent by my observations. Now, there's room for disagreement there; but at least I'm the one that got to see him for the

several weeks that we sat through that.

Based upon the professionals' examination, they could not reach a decision or they reached a decision finding him competent. We're focused on the Trial on the Merits which brought this issue before the Court of Criminal Appeals, which was to determine whether he was competent during the trial. How is determining his competency now going to impact a decision that I would have to make and the Court of Criminal Appeals would have to make in the end as it relates to his competency at the time of trial? I guess that's the confusing point about your request.

MR. MORROW: Judge, if I believe that due process requires that before this -- you can make the next determination, Is this feasible, we have to have a client that can participate to some degree. If we show he can't participate, can't aid his lawyers, then the answer to the question is there for you, that it's not feasible to go forward; and that will end the inquiry.

Judge, I was joking earlier about the civil proceeding. I'm just focusing on the remand and abatement for the Court of Criminal Appeals. The rest of it's just too much to take in at one time, so I'm looking at what did they ask you to do, what did they ask Judge Elliott to do, and that is to decide, Is it

feasible to have a retrospective competency hearing, and, if so, how are we going to do that.

We believe that we need to have this examination to ensure due process for Mr. Turner so that before you make that decision, you know whether or not he's competent; and if he's not, of course, we're going to argue it's not feasible to go forward.

THE COURT: Okay. Yes, sir.

MR. FELCMAN: I appreciate his argument, but that also validates why it is feasible to have a retroactive hearing. This man will not cooperate. It's just that simple. He won't change his stance on that.

The defense of the defendant during the trial, it's actually now evident why he may not have wanted to cooperate. That's what the Court did in its decision about Pat McCann's -- What was his ultimate defense of the defendant? And when you read over the dissent, they look at it and say, We understand why he wasn't cooperating with the defense. Look what the defense was. Look at the things they did when he said he didn't want them to do that.

We also will have the testimony, of course, things that will aid the Court in making this feasibility -- I mean, making this decision or the jury making this decision. His relationship with the family

members, all the things that occurred during the trial make it far more feasible to have a retroactive competency hearing that ever could occur.

Now, him having examined, Mr. Morrow's not trying to trick the Court. It's in there; but I believe in the long run, it will not have any bearing whatsoever about his retroactive -- or what his competency was back then.

THE COURT: Well, I understand the due process argument you're making, that it's difficult -- Well, it's clear that if there's a Trial on the Merits on any definitive issue, the defendant has a right to not only be there but to participate in that process; and if we, in fact, have a retrospective competency hearing, it's important that he be here, No. 1, and, No. 2, able to participate.

I have some doubts in my mind whether Mr. Turner will change the process that he has used throughout this matter, but that's in the future. I can't read that crystal ball yet.

MR. MORROW: May I speak to that briefly, Judge, before you move on?

THE COURT: Yes, sir.

MR. MORROW: Judge, it's been a long time since someone's approached him to examine him, years

now; and we're in a different posture. And I may be the ridiculous optimist in the world; but I believe if we can talk to him now, which would require him to come back to Fort Bend County, and explain the posture of this case and then present him with a disinterested expert, someone that's not -- that he's not seen before that's part of the conspiracy -- You know, I'm not saying we can cure him. It may get better. But I just want that chance, Judge; and I think that's what due process is, is to bring him back now in 2014 and say, "Mr. Turner, the situation has changed. Here's what the circumstances are, and you need to participate with this doctor."

I think -- You know, I just want that chance, Judge; and I think that's what due process requires; and we would ask the Court, with all due respect, to let us have that opportunity.

MR. FELCMAN: Oh, I agree. Why doesn't he go talk to him? I'm more, You can go talk to him, Counsel, and see what he says. This is going to be a Catch-22 with them; and whatever ends up finding, I will be able to use it to sustain why the feasibility of a retrospective hearing is even more --

Mr. Morrow, you're correct. He ought to be able to talk to his client, but that doesn't have

anything to do with his competency back then.

THE COURT: Let me read this Green case real quick.

MR. FELCMAN: Yeah.

THE COURT: All right. I think out of an abundance of caution, I'm going to grant the defendant's request to have a current competency examination performed on Mr. Turner. Because this is a heavily contested matter, what I'm going to order is that the defense and the State each provide their own expert to examine Mr. Turner to determine his present competency.

I will order a -- bench warrant him to Fort Bend County, and I want this done as rapidly as possible. We've delayed this matter quite a bit, and we need to move forward, so submit your names for your experts to the Court. I will order their examination of Mr. Turner; and if you'll prepare a bench warrant today, Mr. Felcman, I'll submit that order.

MR. MORROW: May I approach with this motion, Judge?

THE COURT: Yes.

MR. FELCMAN: Does anybody have a suggestion of exactly what they're supposed to be looking for regarding his competency? Because this is not a trial setting, this is not a defensible issue, is

it going to be the same standard, or is it going to be something different?

THE COURT: It's going to be the same standard, competency --

MR. FELCMAN: Same.

THE COURT: Because the request is a due process request to assist counsel; and, therefore, it would be the same standard as we use for the trial. And I think that would -- In the abundance of caution, I think that would be the best way to proceed; and we can get this done at the earliest convenience; and dependent upon their findings, we'll hold a hearing very shortly thereafter to proceed to the feasibility part of this issue.

MR. FELCMAN: Now, the five judges up there used that against you. You said, "Abundance of caution." They said that that meant that you had a good faith doubt about the defendant's competency in this matter. They used that, even though you multiple times said, Listen, I'm just doing this out of an abundance of caution.

THE COURT: The abundance of caution is to make a full record for the Court of Criminal Appeals to have before them. I have no doubt in my mind that he was competent; but on the other hand, this is a question

that's been raised by nine folks smarter than I am, or at least five of them; and we're going to give them all the ammunition they can use.

MR. FELCMAN: Thank you, Judge.

MR. MORROW: Judge, can we approach off the docket -- off the record about schedules?

MR. FELCMAN: One last thing, Judge.

THE REPORTER: On the record?

MR. FELCMAN: On the record, please, one last thing.

I know Mr. Morrow's aware of it. There are specific requirements for the qualifications of the psychiatrist, okay, so that has to be met on those.

THE COURT: Off the record, Mindy.

THE REPORTER: Yes, sir.

THE STATE OF TEXAS §

COUNTY OF FORT BEND §

I, Mindy R. Hall, official court reporter in and for the 268th District Court of Fort Bend County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $127.50 and will be paid by Fort Bend County.

WITNESS MY OFFICIAL HAND this, the 18th day of August, 2014.

/s/Mindy R. Hall_____
Mindy R. Hall, CSR
Texas CSR 8107
Official Court Reporter
301 Jackson
Richmond, Texas 77469
Telephone: 281.341.8611
Expiration: 12/31/2014

# Exhibit B



# Sam Houston State University

*A Member of The Texas State University System*

## PSYCHOLOGICAL SERVICES CENTER

August 29, 2014

The Honorable Brady G. Elliott
268th District Court
301 Jackson Street
Richmond, TX 77469

Re: Albert Turner
     Cause No.: 54,233

Dear Judge Elliott:

In response to your court order, my assistant and I went to the Polunsky Unit this morning to evaluate Albert Turner for current competence to stand trial. After about 30 minutes we were told that Mr. Turner refused to leave his cell and come to the interview. I then asked if we could be escorted back to his cell so that I could at least make certain he was properly informed of the reason for our visit. However, the unit staff denied that request.

Unfortunately, we were unable to perform the evaluation. I regret the inconvenience this may cause the court and would be willing to evaluate Mr. Turner at another time or in another venue if this would appear feasible. I am enclosing the invoice for our travel time and record review. Please let me know if I can provide further services.

Sincerely,

*Mary Alice Conroy, PhD*

Mary Alice Conroy, Ph.D.
Board Certified in Forensic Psychology

cc. Robert Morrow, Attorney for the Defense
    Gail Kikawa McConnell, Assistant District Attorney

RECEIVED
SEP 04 2014
STRICT ATTORNEY'S OFFICE

*Sam Houston State University is an Equal Opportunity/Affirmative Action Institution*

Huntsville, Texas 77341-2210 ∘ 936.294.1210 ∘ Fax 936.294.1685

# Exhibit C

# MARK S. MOELLER, M.D.

6300 WEST LOOP SOUTH, SUITE 680
BELLAIRE, TEXAS 77401
PHONE: (713) 661-4670
FAX: (713) 661-4672

**CONFIDENTIAL**

September 23, 2014

Fort Bend District Attorney's Office
301 Jackson
Richmond, Texas 77469

Attention:    Ms. Lesleigh Morton
Assistant District Attorney
Lesleigh.morton@fortbendcountytx.gov

Re:    Ex Parte Albert James Turner, Cause no. 10-DCR-054233, in the 268th Judicial District Court of Fort Bend County, Texas

Dear Ms. Morton,

    As per Judge Elliott's order and after my conversation with you on September 18, 2014, I went to the Polunsky Unit (Death Row) to evaluate Albert Turner for current competency to stand trial. After arriving and going through security, I was told that Mr. Turner refused to leave his cell. I offered to go onto the cell block and try to engage him in conversation, but I was told that such a visit would not be allowed.

    I would be willing to evaluate Mr. Turner in the future if he would cooperate. I am enclosing my invoice for record review, a meeting with attorneys and travel time.

    If I can be of any further assistance, please call me.

Sincerely,

Mark S. Moeller, M.D.
Diplomate, American Board of Psychiatry and Neurology
Added qualifications in Forensic Psychiatry
Added qualifications in Geriatric Psychiatry
Added qualifications in Addiction Psychiatry

# Exhibit D

|   | Date | Time | Duration | Visitor # | Visitor |
|---|------|------|----------|-----------|---------|
| 1 | 4/24/2011 | 12:04pm | 29 min, 48 sec | Visitor 12 | Juanita Turner Dawey |
| 2 | 5/5/2011 | 5:50pm | 29 min, 55 sec | Visitor 14 | Willie Bradford Jr. |
| 3 | 5/17/2011 | 6:32pm | 29 min, 55 sec | Visitor 6 | Willie Bradford Jr. |
| 4 | 5/26/2011 | 6:35pm | 29 min, 55 sec | Visitor 16 | Rhodes Lillie Turner |
| 5 | 5/28/2011 | 9:19am | 29 min, 55 sec | Visitor 25 | Juanita Turner Dawey |
| 6 | 5/30/2011 | 1:18pm | 29 min, 53 sec | Visitor 19 | Willie Bradford Jr. |
| 7 | 6/2/2011 | 2:03pm | 27 min, 44 sec | Visitor 10 | Kelly J. Colon |

# Exhibit E

|    | Date      | Time     | Number called   | Duration | Call log |
|----|-----------|----------|-----------------|----------|----------|
| 1  | 4/7/2011  | 19:22:32 | (407) 765-0779  | 10:28    | 470B10JF |
| 2  | 4/8/2011  | 20:08:33 | (407) 760-0308  | 15:00    | 480B206D |
| 3  | 4/9/2011  | 12:30:40 | (407) 765-0779  | 14:38    | 490B2076 |
| 4  | 4/9/2011  | 18:40:08 | (407) 760-0308  | 15:00    | 492720K7 |
| 5  | 4/17/2011 | 9:29:03  | (407) 760-0308  | 15:00    | 4H0B20EK |
| 6  | 4/18/2011 | 19:15:01 | (407) 760-0308  | 14:29    | 4I0B20G5 |
| 7  | 4/20/2011 | 20:05:43 | (407) 760-0308  | 15:00    | 4K2720TZ |
| 8  | 4/24/2011 | 10:18:36 | (407) 760-0308  | 15:00    | 4O0B20N2 |
| 9  | 4/24/2011 | 18:47:53 | (407) 760-0308  | 13:38    | 4O0B20NR |
| 10 | 4/25/2011 | 17:13:53 | (407) 760-0308  | 15:00    | 4P0B20OJ |
| 11 | 4/27/2011 | 20:46:18 | (407) 760-0308  | 15:00    | 4R27200D |
| 12 | 5/1/2011  | 11:08:00 | (407) 765-0779  | 14:47    | 510B20U6 |
| 13 | 5/6/2011  | 19:27:39 | (407) 760-0308  | 15:00    | 560B210R |
| 14 | 5/9/2011  | 19:41:34 | (407) 765-0779  | 13:06    | 590B204G |
| 15 | 5/11/2011 | 18:25:05 | (407) 765-0779  | 7:01     | 5B0B206S |
| 16 | 5/11/2011 | 19:59:08 | (407) 760-0308  | 11:00    | 5B0B207A |
| 17 | 5/16/2011 | 19:06:09 | (407) 765-0779  | 8:27     | 5G0B20E4 |
| 18 | 5/17/2011 | 17:58:19 | (407) 765-0779  | 8:34     | 5H0B20FM |
| 19 | 5/17/2011 | 19:21:31 | (407) 760-0308  | 15:00    | 5H0B20G3 |
| 20 | 5/19/2011 | 21:31:12 | (407) 760-0308  | 6:03     | 5J0B10GM |
| 21 | 5/19/2011 | 21:38:47 | (407) 760-0308  | 14:21    | 5J0B10GN |
| 22 | 5/19/2011 | 20:14:59 | (407) 765-0779  | 14:58    | 5J0B20JM |
| 23 | 5/20/2011 | 17:37:11 | (407) 760-0308  | 15:00    | 5K0B10HU |
| 24 | 5/25/2011 | 18:45:17 | (407) 760-0308  | 15:00    | 5P0B20QM |
| 25 | 5/26/2011 | 17:06:28 | (407) 760-0308  | 13:57    | 5Q0B20RO |
| 26 | 5/27/2011 | 12:29:30 | (407) 765-0779  | 10:16    | 5R0B20TA |
| 27 | 5/29/2011 | 16:21:16 | (407) 760-0308  | 15:00    | 5T0B20Z3 |
| 28 | 5/29/2011 | 17:01:49 | (407) 760-0308  | 15:00    | 5T0B20Z4 |
| 29 | 5/30/2011 | 15:52:47 | (407) 760-0308  | 15:00    | 5U27202L |
| 30 | 6/1/2011  | 19:18:33 | (407) 760-0308  | 14:49    | 610B204K |
| 31 | 6/5/2011  | 16:51:01 | (407) 760-0308  | 15:00    | 650B20B9 |
| 32 | 6/5/2011  | 17:23:36 | (407) 760-0308  | 14:00    | 650B20BB |
| 33 | 6/5/2011  | 20:14:56 | (407) 761-4872  | 15:00    | 650B20BM |
| 34 | 6/6/2011  | 18:49:35 | (407) 761-4872  | 15:00    | 662720C1 |
| 35 | 6/8/2011  | 15:37:01 | (407) 761-4872  | 12:00    | 680G10TM |
| 36 | 6/8/2011  | 19:31:36 | (407) 760-0308  | 15:00    | 680G10U3 |
| 37 | 6/9/2011  | 17:09:50 | (407) 760-0308  | 15:00    | 690G10VH |
| 38 | 6/9/2011  | 17:50:54 | (407) 446-1987  | 15:00    | 690G10VJ |
| 39 | 6/10/2011 | 4:06:15  | (407) 760-0308  | 4:06     | 6A0G10W5 |

**Exhibit F**

## N0. PD-

## TO THE COURT OF CRIMINAL APPEALS
## OF TEXAS AT AUSTIN, TEXAS

---

THE STATE OF TEXAS,
                    Appellant - Respondent

v.

SHANE S. GREENE,
                    Appellee - Petitioner

---

## FROM THE FOURTH COURT OF APPEALS
## AT SAN ANTONIO, TEXAS
## CAUSE NUMBER 04-05-00783-CR

---

## STATE'S FIRST AMENDED PETITION FOR DISCRETIONARY REVIEW

---

SUSAN D. REED
Criminal District Attorney
Bexar County, Texas

JAMES ISHIMOTO
TIM MOLINA
Assistant Criminal District Attorney
Bexar County, Texas

<u>ORAL ARGUMENT WAIVED</u>

CRYSTAL CHANDLER
Assistant Criminal District Attorney
Bexar County, Texas
Cadena-Reeves Justice Center
300 Dolorosa, Suite 4030
San Antonio, Texas 78205-3030
Telephone No. (210) 335-2418
State Bar No. 90001609
(On Appeal)

Attorneys for the State

i

## TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## GROUNDS FOR REVIEW

### Ground for Review 1:

Whether the Court of Appeals applied an incorrect standard of review to the appellant's complaint that the trial court failed to conduct an informal inquiry pursuant to Article 46B.004(c).

### Ground for Review 2:

Did the Court of Appeals err by failing to recognize the trial court conducted an "informal inquiry" pursuant to Texas Code of Criminal Procedure article 46B.004(c)?

### Ground for Review 3:

Whether the Court of Appeal's finding that the trial court did not conduct an "informal inquiry" implicitly imports a high degree of formality not intended by the Legislature when it created the new "informal inquiry" component of Article 46B.004(c) in the Code of Criminal Procedure.

1

# Exhibit G

No. 10-DCR-054233

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 268TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| ALBERT JAMES TURNER | § | FORT BEND COUNTY, TEXAS |

## AFFIDAVIT OF Gary Eles Hunter

My name is Gary Eles Hunter. I am over the age of eighteen years and have personal knowledge of the facts stated herein, which are true and correct.

I am currently employed as a Correction Officer with the Texas Department of Criminal Justice, Polunsky Unit assigned to the Death Row Intelligence Unit. I have been employed as such for approximately 13 years. As a part of my assignments I have become with writings of inmates as well as the meanings of those writings. On December 16, 2014 I removed items from inmate Albert James Turner TDCJ #999### for review by Investigator John Bohannon of the Fort Bend County District Attorney's Office. While assisting Investigator Bohannon I noticed writings I recognized as writings associated with Fantasy Football. These writings consisted of numerous pieces of papers with numbers listed and added. This indicated to me that inmate Turner was attempting to select a team by a mandatory salary cap. There were also several magazines in reference to Fantasy Football. To my understanding Fantasy Football is a competition between individuals where individuals select current NFL football players as team members of a fictitious team. The individual collects points during the Official NFL season by the results of their team's

performance. The selection of teammates are normally based upon the players' statistics. As a person who plays Fantasy Football I am aware that this is a complicated process.

I also noticed a diagram I recognized as an instruction to alter an am/fm clock radio purchased from TDCJ commissary. Inmate Turner was found to have such an am/fm clock radio on his property. I examined Turner's radio and determined to have been altered from it's original configuration. From my experience this is a difficult task to complete, even with the instructions.

BEFORE ME, the undersigned authority, this day personally appeared Gary Hunter and by oath stated that the facts herein stated are true and correct.

SWORN TO AND SUBSCRIBED BEFORE ME before me on this day November 16 , 2014.
December

Kayla Scott
Notary Public in and for the State of Texas
My commission expires: 7/15/2017

KAYLA SCOTT
Notary Public. State of Texas
My Commission Expires
07/15/2017
NOTARY PUBLIC
STATE OF TEXAS
Notary Without Bond

No. 10-DCR-054233

| STATE OF TEXAS | | IN THE 268TH JUDICIAL |
| --- | --- | --- |
| VS. | | DISTRICT COURT OF |
| ALBERT JAMES TURNER | | FORT BEND COUNTY, TEXAS |

## AFFIDAVIT OF JOHN BOHANNON

My name is John Bohannon.   I am over the age of eighteen years and have personal knowledge of the facts stated herein, which are true and correct.

I became a certified peace officer in 1992 and have over eighteen years experience as a peace officer.   I am currently employed as an investigator with the Fort Bend County District Attorney's Office.

On December 16, 2014, I took the attached photos at the Texas Department of Criminal Justice, Polunsky Unit.   The attached photos are a fair and accurate depiction of the items as I observed them.

Signed on January ___7___, 2015.

_signature_
John Bohannon

BEFORE ME, the undersigned authority, this day personally appeared John Bohannon and by oath stated that the facts herein stated are true and correct.

SWORN TO AND SUBSCRIBED BEFORE ME before me on this day January___7th___, 2015.

NEVA E. GONZALEZ
Notary Public, State of Texas
Commission Expires 12-21-2015

_signature_
Notary Public in and for the State of Texas
My commission expires:



Clob pot

on screws

An

Get placed where last post WRAP Around Box

Volume Box

hinge

Red Screw

wood covered



# PRO FANTASY FOOTBALL

You pick Ten (10) players -- 1QB -- 3RB -- 3WR -- 1TE -- 1K -- 1DF: All players must be listed in their designated position. As may cap of 100 million. You can not go over the Cap. All teams must be submitted by NOON Friday. If you pick players from the "Thursday game, those players must be submitted by "Wednesday." 9 to 13 teams commit gets 1 mile, 14 + 24 he gets 2 miles, 25 to 39 he gets 3 and 40 or more he gets 4. Scoring System is as follows:

## PASSING POINTS:

Pass Completions — 2 pts. for every Completions (10pt. bonus for 24 or more) ⎤
Passing Yards — 1 pt. for every 10yds. points (10pt. bonus for 300 or more) ⎬ 114
Passing Touchdown — 6 pts. for every thrown TD (10pt. bonus for 4 or more) ⎦

23
28    29    14
33    48    8

## RUSHING POINTS:

Rushing Attempts — 2 pts. for every Carry (10pt. bonus for 24 or more) ⎤ 134
Rushing Yards — 2 pts. for every 10yds. (10pt. bonus for 100 or more) ⎬
Rushing Touchdown — 10 pts. for every rushing TD (10pt. bonus for 4 or more) ⎦ 30

## RECEIVING POINTS:

Receptions — 2 pts. for every Catch (10pt. bonus for 10 or more) ⎤ 80
RB Reception Only — 5 pts. for every Catch (10pt. bonus for 8 or more) ⎬ 30
Receiving Yards — 2 pt. for every 10yds. (10pt. bonus for 100 or more) ⎭
Receiving TD — 10 pts. for every receiving TD (10pt. bonus for 4 or more) 211

## KICKER POINTS:

Field Goals — 40 pts. for 59 or more ⎤ (10pt. bonus for 4 or more) 120
30 pts. for 50 to 58 ⎬ Field Goals    130
20 pts. for 40 to 49 ⎦              115

PATs — 4 pts. for every P.A.T. made

## DEFENSIVE POINTS:

Sacks — 5 pts. for every sack (10pt. bonus for 5 or more) ⎤ 43
Interception/Fumbles — 10pts. for every int/fum recovered (10pt. bonus for 4 or more) ⎬
Defensive Touchdown — 20 pts. for every TD (include punt/int TD return and for TD's) 10
to pts. for every safety (10pt. bonus for 2 or more)
for not allowing opponent to score
for holding opponent to less than 10 points
for not letting opponent to 10 to 19 points

Any player Scores a 2-point Conversion gets 10 points.

## Running Back

| Running Back | TM | Sal | Running Back | TM | Sal |
|---|---|---|---|---|---|
| L. McCoy | Phi | 17.0 | C. Ivery TV | Jets | 7.7 |
| J. Charles | K.C | 16.5 | B. Pierce | Balt | 7.6 |
| A. Peterson | Minn | 16.0 | S. Vereen | N.E. | 7.5 |
| E. Lacy | G.B. | 15.6 | J. Hill | Cinn | 7.4 |
| M. Forte TV | Chi | 15.3 | D. Sproles | Phi | 7.2 |
| M. Ball | Den | 15.0 | A. Williams | NYG | 6.9 |
| M. Lynch | Sea | 14.5 | L. Blount | Pitt | 6.7 |
| A. Ellington TV | Ariz | 14.3 | K. Moreno | Mia | 6.5 |
| D. Murray TV | Dal | 14.1 | M. Ingram | N.O. | 6. |
| T. Gerhart | Jac | 13.6 | S. Taylor | Ariz | 5.5 |
| D. Martin | T.B. | 13.3 | J. Rodgers | Atl | 5. |
| L. Bell TV | Pitt | 13.1 | C. Hyde | S.F. | 5.6 |
| Z. Stacy TV | St.L | 13.2 | M. Tolbert | Car | 5. |
| C.J. Spiller | Buff | 12.9 | R. Helu | Wash | 5.4 |
| B. Sankey | Tenn | 12.7 | A. Bradshaw | Ind | 5. |
| S. Fos... | | | K. Davis | | |
| F. Gor... | | | R. Hillman | | |
| B. Tat... | | | S. Jackson | | |
| | | | F. Stark... | | |
| P. Bu... | | | L. Dunbar | | |
| K. Mat... | | | S. Green | | |
| A. Mo... | | 10.6 | R. Turbin | Sea | 4.5 |
| G. Bernard | Cinn | 10.4 | M. Leshoure | Det | 4.4 |
| C. Johnson TV | Jets | 10.0 | J. Grimes | Hou | 4.3 |
| R. Jennings TV | NYG | 9.8 | M. Reece | Oak | 4.1 |
| I. Thomas | N.O. | 9.6 | B. Cunningham | St.L | 4.1 |
| ... Miller | Mia | 9.5 | K. Carey | Chi | 4.0 |
| R. Rice | Balt | 9.3 | A. Blue | | 3.9 |
| ... Williams | Car | 9.1 | M. Asiata | Tenn | 3.8 |
| R. ...ley | N.E. | 9.0 | D. Brown | S.D. | 3.7 |
| M. Jones-Drew | Oak | 8.7 | B. Rainey | T.B. | 3.6 |
| D. Freeman | Atl | 8.5 | P. Hillis | N.Y | 3.5 |
| F. Jackson | Buff | 8.3 | J. Todman | Jac | 3.4 |
| D. Woodhead | S.D. | 8.1 | B. Green-Ellis | Cinn | 3.2 |
| D. McFadden | Oak | 8.0 | J. White | Mia | 3.0 |

130   184

Unlisted R.B. 6.0
4.0 0.0

## Wide Receiver

| Wide Receiver | TM | Sal | Wide Receiver | TM | Sal |
|---|---|---|---|---|---|
| C. Johnson | Det | 13.0 | P. Harvin | Sea | 7.2 |
| D. Thomas | Den | 12.7 | C. Givens | St.L | 7.1 |
| D. Bryant TV | Dal | 12.4 | D. Amendola | N.E. | 7.0 |
| B. Marshall TV | Chi | 12.1 | R. Cooper | Phi | 6.9 |
| J. Jones | Atl | 12.0 | T. Williams | Dal | 6.8 |
| A.J. Green | Cinn | 11.5 | D. Baldwin | Sea | 6.7 |
| J. Nelson | G.B. | 11.3 | E. Sanders | Den | 6.6 |
| A. Brown TV | Pitt | 11.0 | R. Woods | Buff | 6.4 |
| A. Johnson TV | Hou | 10.9 | G. Tate | Det | 6.3 |
| V. Jackson | T.B. | 10.7 | D. Hopkins | Hou | 6.2 |
| C. Patterson | Minn | 10.5 | B. Hartline | Mia | 5.8 |
| T. Smith | Balt | 10.4 | R. Randle | NYG | 5.7 |
| V. Cruz TV | NYG | 10.2 | M. Floyd | Ariz | 5.6 |
| K. Allen | S.D. | 10.0 | B. Cooks | N.O. | 5.5 |
| D. Jackson | Wash | 9.9 | K. Benjamin | Car | 5.4 |
| A. Jeffery | Chi | 9.7 | H. Nicks | Ind | 5. |
| E. Decker | Jets | 9.6 | A. Boldin | S.F. | 5.2 |
| M. Crabtree | S.F. | 9.4 | M. Evans | T.B. | 5.1 |
| R. Cobb | G.B. | 9. | ... Anderson | Ariz | 5.0 |
| R. White | Atl | 9.1 | N. Washington | Tenn | 4.9 |
| W. Welker | Den | 9.0 | M. Lee | Jac | 4.8 |
| P. Garcon | Wash | 8.8 | R. Streater | Oak | 4.7 |
| R. Wayne | Ind | 8.7 | S. Smith | Balt | 4.6 |
| L. Fitzgerald | Ariz | 8.6 | A. Dobson | N.E. | 4.5 |
| M. Colston | N.O. | 8.5 | J. Hunter | Tenn | 4.4 |
| M. Wallace | Mia | 8.4 | J. Matthews | Phi | 4.3 |
| G. Jennings | Minn | 8.3 | J. Boykin | G.B. | 4.2 |
| J. Jones | Oak | 8.2 | M. Floyd | S.D. | 4.1 |
| T.Y. Hilton | Ind | 8.1 | A. Holmes | Oak | 4.0 |
| J. Edelman | N.E. | 8.0 | A. Hawkins | Clev | 3.9 |
| C. Shorts | Jac | 7.9 | K. Stills | N.O. | 3.8 |
| D. Bowe | K.C. | 7.8 | H. Douglas | Atl | 3.7 |
| J. Cotchery | Car | 7.7 | M. Jones | Cinn | 3.6 |
| M. Austin | Clev | 7.6 | J. Wright | Minn | 3.5 |
| K. Wright | Tenn | 7.5 | E. Royal | S.D. | 3.4 |
| J. Maclin | Phi | 7.4 | T. Austin | St.L | 3.2 |
| S. Watkins | Buff | 7.3 | D. Avery | K.C. | 3.0 |

42   11.3
54
Unlisted WR 6.08
96   2011



A WARHORSE PUBLICATION



# HANDBOOK FOR THE JAILHOUSE LAWYER

by

Dr. Jessie D. McDonald, Ed. D.

## KNOWLEDGE IS THE KEY TO UNDERSTANDING

### Learn About:

Setting up a Home Based Business;
Writing a Grant Proposal;
Writing a Loan Proposal;
Keeping Business Records;
Business Investments;
Writing Legal Documents;
Corporations: For Profit and Non-Profit;

Copyright © November, 2003
by Warhorse Publications

Happy Birthday!

The BLESSING of AFRICA — Burton — IVP

Fifty Shades of Grey — E L James

THE BOND — Drs. SAMPSON DAVIS, GEORGE JENKINS and RAMECK HUNT

Corvette — The Great American Sports Car

THE UNINVITED — LACHANCE

KHALED HOSSEINI — KITE RUNNER

WEBSTER'S DICTIONARY

World War II FOR DUMMIES — Dick

japanese DeMYSTiFieD — Sato

CYNTHIA MOSS — Elephant Memories

HOLY BIBLE — Catholic Readers Edition

DEAN KOONTZ — hideaway

THE CONSTANT GARDENER — JOHN LE CARRE

DEEPAK CHOPRA — JESUS

THRIFTBOOKS 04 07812 480





## NO. 10-DCR-054233

| | | |
|---|---|---|
| THE STATE OF TEXAS | } | IN THE DISTRICT COURT OF |
| | } | |
| V. | } | FORT BEND COUNTY, TEXAS |
| | } | |
| ALBERT JAMES TURNER | } | 268TH JUDICIAL DISTRICT |

## AFFIDAVIT

Before me, the undersigned authority, personally appeared _Gary Hunter_, who, being by me duly sworn, deposed as follows:

1.  I am the custodian of the records of the Texas Department of Criminal Justice, Institutions Division and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.
2.  Attached hereto are _96_ pages of records. These are the original records or the exact duplicates of original records.
3.  Based on the regular practices of the Texas Department of Criminal Justice, the records were:
    a.  made at or near the time of each act, event, condition, opinion, or diagnosis set forth in the records;
    b.  made by, or from information transmitted by, persons with knowledge of the matters set forth; and
    c.  kept in the course of regularly conducted business activity.
4.  It was the regular practice of the business activity to make the records.

_Gary Hunter_
Affiant

SWORN TO AND SUBSCRIBED before me on the 16 day of _Dec_, 2014.

KAYLA SCOTT
Notary Public. State of Texas
My Commission Expires
07/15/2017
Notary Without Bond

_Kayla Scott_
Notary Public, State of Texas

_Kayla Scott_
Notary's printed name:

_7/15/2017_
My Commission Expires

DECLARATION OF  *Gary Hunter*

"I am over 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts herein stated.

"I am the custodian of records for the <u>Polunsky Unit</u> of the Texas Department of Criminal Justice ("TDCJ"). I have been requested to provide true and correct copies of the following: *D.R.C.C. Review Sheets (J-203)*
*visit worksheets*
*Disciplinary Records*
*Commissary Order slips*
from records kept by the TDCJ in the regular course of its business activity. I have searched such records.

"My name is  *Gary Hunter*  and I am an employee of the TDCJ, a governmental agency. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the foregoing is true and correct."

Executed in <u>Polk County</u>, State of Texas, on the 13th day of November, 2014

**B45**

Commissary & Trust Fund
POLUNSKY UNIT 'B'
Commissary Purchase Receipt

Date: 12/15/14
Time: 8:33:54
Page: 1

Location...: 0542 - 02
Salesperson: SK000015

Purchaser: TURNER, ALBERT JAMES
ID Number: 00999565

Housing: 12BD1
Begin Spend Limit: $12.02
Spend Limit: CELL45

Beginning Account Balance: $12.02

| Item Number | Item Description | Unit Price | Quantity | Ext.Amt | Class | Spend Limit |
|---|---|---|---|---|---|---|
| 00910 | STAMP 1.15 | 1.15 | 4 | 4.60 | CORR | $9.12 |
| 00402 | *REFRIED BEANS W/JAL 12 OZ. | 1.45 | 2 | 2.90 | REGU | $7.27 |
| 06229 | *CREAMY PEANUT BUTTER 18 OZ | 1.85 | 1 | 1.85 | REGU | $6.42 |
| 09720 | *FLOUR TORTILLA 12 PK | .85 | 1 | .85 | REGU | $4.92 |
| 00031 | BIG BANG CHIP | 1.50 | 1 | 1.50 | REGU | $4.92 |

Transaction Total: 9 $11.70

Sales Tax included in above amount: $.00
Ending Account Balance: $.32

End Spend Limit: $4.92

SIGNATURE _____

ALL SALES ARE FINAL

THUMB PRINT

---

## COMMISSARY ORDER SL
SLIP MUST BE FILLED OUT COMPLET

| QTY | ITEM-DESCRIPTION | PF |
|---|---|---|
| 4 | STAMP 1.15 | |
| 2 | ReFried Beans with Jalapeno | |
| 1 | peanut Butter | |
| 1 | Tortilla Flour | |
| 1 | Hawaiian Punch GREEN Berry Rush | |
| 1 | Big Bang | |
| 8 | corn/chips | |
| 10 | Cappaccino Vanilla/choc sub | |
| 5 | Beef summer Sausage | |
| 2 | Salsa Verda | |
| 5 | Mackeral | |
| 4 | Jalapeno whole aspab | |
| 1 | Black ice polo | |
| 10 | Forever Stamp | |
| 4 | Instant Rice | |
| 1 | Salad dressing | |

DATE _____ TC

DO NOT TEAR! LEAVE FULL LENI
ALL SALES FINAL! NO EXCH

Albert Turner        9

NAME
12-B-D-45           1c

LOCATION

SO-7 (Rev. 2/86)

**B45**

Salesperson: SS00163

POLUNSKY UNIT 'B'
Commissary Purchase Receipt

Time: 10:17:10
Page: 1

Purchaser: TURNER, ALBERT JAMES
ID Number: 00999565

Housing: 12-B-D ROW-1 CELL45
Beginning Account Balance: $3.32    Begin Spend Limit: $3.32

| Item Number | Item Description | Unit Price | Quantity | Class | Ext.Amt | Spend Limit |
|---|---|---|---|---|---|---|
| 000229 | *CREAMY PEANUT BUTTER 18 OZ | 1.85 | 1 | REGU | 1.85 | $1.47 |
| 000910 | STAMP 1.15 | 1.15 | 1 | CORR | 1.15 | |
| 01194 | *CHICK-O-STICK .7 OZ | .15 | 2 | REGU | .30 | $1.17 |

Transaction Total: 4          $3.30

Sales Tax included in above amount:    $.02
Ending Account Balance:    $.02    End Spend Limit:    $1.17

_____  _____
SIGNATURE              ALL SALES ARE FINAL    THUMB PRINT

---

COMMISSARY ORDER SLIP
SLIP MUST BE FILLED OUT COMPLETE

| ITEM-DESCRIPTION | PR |
|---|---|
| 1 Peanut Butter | |
| 1 Stamp 1.15 | |
| 2 Chick-o-stick | |

④

DATE            TO

DO NOT TEAR! LEAVE FULL LENG
ALL SALES FINAL! NO EXCHA

Albent Turner          99
NAME
12 B-D-45              10-
LOCATION
SO-7 (Rev. 2/86)

## COMMISSARY ORDER SLIP
SLIP MUST BE FILLED OUT COMPLETEL

| QTY | ITEM-DESCRIPTION | PRIC |
|---|---|---|
| 1 | Foreven stamp | 0.4 |
| 1 | peanut Butler | 1.8 |
| | | |

| | DATE | TOT/ |
|---|---|---|

DO NOT TEAR! LEAVE FULL LENGT
ALL SALES FINAL! NO EXCHAI

Albert Turner        99

NAME 12-B-D 45        Sul

LOCATION

SO-7 (Rev. 2/86)

Location...: 0542 - 01
Salesperson: BC00051

Commissary & Trust Fund
POLUNSKY UNIT 'B'
Commissary Purchase Receipt

Date:  7/21/14
Time:  8:34:30
Page:    1

Purchaser: TURNER, ALBERT JAMES
ID Number: 00999565

Housing: 12-B-D ROW-1 CELL 45

| Item Number | Item Description | Beginning Account Balance: | $1.42 | Begin Spend Limit: | $1.42 |
| --- | --- | --- | --- | --- | --- |
| | | Unit Price | Quantity | Ext. Amt | Class | Spend Limit |

| Item Number | Item Description | Unit Price | Quantity | Ext. Amt | Class | Spend Limit |
| --- | --- | --- | --- | --- | --- | --- |
| 04108 | OATMEAL COOKIE | 1.05 | 1 | 1.05 | REGU | $.37 |
| 01194 | CHICK-O-STICK .7 OZ | .14 | 2 | .28 | REGU | $.09 |

|  |  |  |  |
| --- | --- | --- | --- |
| Transaction Total: | 3 | $1.33 | |
| Sales Tax included in above amount: | | $.02 | |
| Ending Account Balance: | | $.09 | End Spend Limit: | $.09 |

SIGNATURE _____        THUMB PRINT _____

ALL SALES ARE FINAL



Purchaser: TURNER, ALBERT JAMES                                                    Housing: 12-B-D ROW-1 CELL 45
ID Number: 00999565              Beginning Account Balance:      $200.09   Begin Spend Limit:    $85.00
Item Number   Item Description        Unit Price   Quantity     Ext. Amt   Class      Spend Limit

| Item Number | Item Description | Unit Price | Quantity | Ext. Amt | Class | Spend Limit |
|---|---|---|---|---|---|---|
| 00872 | *SALT/PEPPER-MINI | 1.45 | 1 | 1.45 | REGU | $83.55 |
| 04108 | *OATMEAL COOKIE | 1.05 | 1 | 1.05 | REGU | $82.50 |
| 01194 | *CHICK-O-STICK .7 OZ | .15 | 6 | .90 | REGU | $81.60 |
| 00981 | SHIRT-T 3X-LARGE | 7.25 | 1 | 7.25 | REGU | $74.35 |
| 00229 | *CREAMY PEANUT BUTTER 18 OZ | 1.85 | 2 | 3.70 | REGU | $70.65 |
| 00096 | ANTIBACTERIAL BAR SOAP 1.25 OZ | .10 | 30 | 3.00 | HYGN | $67.65 |
| 00094 | DIAL SOAP 1.25 OZ | .20 | 15 | 3.00 | HYGN | $64.65 |
| 09305 | CORN CHIPS 16 OZ | 1.65 | 2 | 3.30 | REGU | $61.35 |
| 00081 | BBQ CHIPS #1826 8 OZ | 1.50 | 2 | 3.00 | REGU | $58.35 |
| 00119 | ANTIPERSPIRANT 3 OZ MENNEN | 2.15 | 1 | 2.15 | HYGN | $56.20 |
| 00910 | STAMP 1.15 | 1.15 | 15 | 17.25 | CORR | $38.95 |
| 00079 | *100% COLOMBIAN COFFEE 4 OZ | 2.65 | 2 | 5.30 | REGU | $33.65 |
| 00041 | SALSA VERDE CHIPS 6 OZ #1856 | 1.10 | 1 | 1.10 | REGU | $32.55 |

Purchaser: TURNER, ALBERT JAMES                                                    Housing: 12-B-D ROW-1 CELL 45
ID Number: 00999565              Beginning Account Balance:      $200.09   Begin Spend Limit:    $85.00
Item Number   Item Description        Unit Price   Quantity     Ext. Amt   Class      Spend Limit

| Item Number | Item Description | Unit Price | Quantity | Ext. Amt | Class | Spend Limit |
|---|---|---|---|---|---|---|
| 09720 | *FLOUR TORTILLA 12 PK | .85 | 5 | 4.25 | REGU | $28.30 |
| 00075 | *INSTANT RICE 8 OZ | .85 | 5 | 4.25 | REGU | $24.05 |
| 51035 | *KOSHER-INS.CHILI 8 OZ | 1.75 | 4 | 7.00 | REGU | $17.05 |
| 00063 | VANILLA CAPPUCCINO .81 OZ | .20 | 15 | 3.00 | REGU | $14.05 |
| 04130 | MARIAS COOKIES | .55 | 3 | 1.65 | REGU | $12.40 |
| 00269 | *INSTANT NONFAT MILK 3.2 OZ | .95 | 1 | .95 | REGU | $11.45 |
| 00704 | COCOA BUTTER LOTION 8 OZ | .90 | 1 | .90 | REGU | $10.55 |
| 00928 | SOCKS-BLACK TOP *SINGLE PR. | 1.65 | 1 | 1.65 | REGU | $8.90 |
| 00030 | BAKED SALT & PEPPER CHIP | 1.90 | 1 | 1.90 | REGU | $7.00 |
| 00378 | *WHOLE JALAPENO PEPPER 1.3 OZ | .25 | 4 | 1.00 | REGU | $6.00 |
| 00084 | PLANTATION/B.BEST COFFEE 4 OZ | 1.10 | 1 | 1.10 | REGU | $4.90 |
| 01042 | STAMP-FOREVER | .49 | 2 | .98 | CORR | $3.92 |
| 00160 | ORANGE JUICE 11.5 OZ | .60 | 6 | 3.60 | REGU | $.32 |

Location...: 0542 - 01
Salesperson: BC00051

Commissary & Trust Fund
POLUNSKY UNIT 'B'
Commissary Purchase Receipt

Date: 9/11/14
Time: 5:51:12

Purchaser: TURNER, ALBERT JAMES
ID Number: 00999565

Beginning Account Balance:  $:

| Item Number | Item Description | Unit Price | Quantity | E) |
|---|---|---|---|---|
| 00850 | SHOWER SCUFF 3XL 15/16 | 5.00 | 1 | |
| 00229 | *CREAMY PEANUT BUTTER 18 OZ | 1.85 | 2 | |
| 00910 | STAMP 1.15 | 1.15 | 6 | |
| 00075 | *INSTANT RICE 8 OZ | .85 | 8 | |
| 00160 | ORANGE JUICE 11.5 OZ | .60 | 10 | |
| 00269 | *INSTANT NONFAT MILK 3.2 OZ | .95 | 2 | |
| 51035 | *KOSHER-INS.CHILI 8 OZ | 1.75 | 2 | |
| 09720 | *FLOUR TORTILLA 12 PK | .85 | 2 | |
| 09305 | CORN CHIPS 16 OZ | 1.65 | 2 | |
| 01127 | BUTTERSCOTCH CANDY | .85 | 2 | |
| 01118 | PRIMROSE HARD CANDY | 2.20 | 2 | |
| 01042 | STAMP-FOREVER | .49 | 14 | |
| 04130 | MARIAS COOKIES | .50 | 1 | |

Location...: 0542 - 01
Salesperson: BC00051

Commissary & Trust Fund
POLUNSKY UNIT 'B'
Commissary Purchase Receipt

Purchaser: TURNER, ALBERT JAMES
ID Number: 00999565

Beginning Account Balance:  $:

| Item Number | Item Description | Unit Price | Quantity | E) |
|---|---|---|---|---|
| 00079 | *100% COLOMBIAN COFFEE 4 OZ | 2.65 | 1 | |
| 00084 | PLANTATION/B.BEST COFFEE 4 OZ | 1.10 | 1 | |
| 00872 | *SALT/PEPPER-MINI | 1.45 | 1 | |
| 01351 | BLACK INK PEN OFFENDER PROP | .30 | 2 | |
| 00378 | *WHOLE JALAPENO PEPPER 1.3 OZ | .25 | 4 | |
| 00861 | HEADPHONE 6' | 5.50 | 1 | |

Transaction Total:  64  $
Sales Tax included in above amount:
Ending Account Balance:  $

SIGNATURE

ALL SALES ARE FINAL

THUMB PRINT

## COMMISSARY ORDER SLIP
SLIP MUST BE FILLED OUT COMPLETELY

| QTY | ITEM-DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Shower scuff 3XL 15/16 | | |
| 2 | peanut Butter | | |
| 6 | Stamps 1,15 | 1,15 | |
| 8 | Instant Rice | | |
| 10 | Orange juice | | |
| 2 | Kosher Ins Chili | | |
| 2 | Flour tortilla | | |
| 2 | Instant Non-fat Milk | | |
| 2 | Corn chips | | |
| 2 | Jalapeno chips | | |
| 2 | Primrose hard candy | | |
| 2 | Butterscotch candy | | |
| 14 | Stamp Forever | .49 | |
| 1 | Marias cookies | | |
| 1 | plantation B.Best coffee | | |
| 1 | 100% Colomban coffee | | |
| 1 | Salt/pepper Mini | | |
| 2 | Black Ink pen | | |
| 4 | Jalapeno pepper whole | | |
| 1 | Head phone | | |

DATE                    TOTAL

DO NOT TEAR! LEAVE FULL LENGTH !
ALL SALES FINAL! NO EXCHANGE!

Albert Turner
NAME                    999565
                        NUMBER
12 BD.45                Sept 11 14
LOCATION                DATE

SO-7 (Rev. 2/86)

# COMMISSARY ORDER SLIP

SLIP MUST BE FILLED OUT COMPLETELY

| QTY | ITEM-DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 2 | Turkey & swiss stick | | |
| 1 | Black Ice "Polo" Body w | | |
| 4 | stamp 1.15 | | |
| 1 | Kosher Hot Dill pickle | | |

DATE

TOTAL

**DO NOT TEAR! LEAVE FULL LENGTH !**
**ALL SALES FINAL! NO EXCHANGE!**

NAME: Albert Turner

NUMBER: 999565

LOCATION: 12 B-D-45

DATE: Oct 13-14

**SO-7 (Rev. 2/86)**

Commissary & Trust Fund
POLUNSKY UNIT 'B'
Commissary Purchase Receipt

Date: /21/14
Time: 24:26
Page:

Housing: 12-B ROW-1 CELL
Begin Spend L
Class

Beginning Account Balance: $200.00
Unit Price  Quantity
Ext.Amt

Transaction Total: 128    $84.68
                          $1.20
Sales Tax included in above amount:
Ending Account Balance:   $115.41

End Spend Limit: $.32

Location...: 0542 - 01
Salesperson: HV000019

Purchaser: TURNER, ALBERT JAMES
ID Number: 000999565
Item Number   Item Description

# COMMISSARY ORDER SLIP
SLIP MUST BE FILLED OUT COMPLETELY

| QTY | ITEM-DESCRIPTION | PRICE | AMOUNT |
|-----|------------------|-------|--------|
| 1 | Salt & pepper mini | | |
| 1 | Oatmeal cookies | | |
| 6 | Chick o stick | | |
| 1 | T-shirt 3xL | | |
| 30 | Antibacterial soap | | |
| 15 | Dial soap | | |
| 2 | Peanut Butter | | |
| 2 | Corn chips / sub salsa verde | | |
| 2 | Jalapeno chips / sub BBQ chips | | |
| 1 | Antiperspirant deoderant | | |
| 15 | Stamp 1.15 | | |
| 2 | Colombian coffee | | |
| 1 | Salsa Verde chips / sub vanilla chip | | |
| 5 | Flour tortilla | | |
| 5 | Instant Rice | | |
| 4 | Kosher ins chili | | |
| 15 | Vanilla cappuccino | | |
| 1 | Shower scuff, NO SIZE | | |
| 3 | Marias cookies | | |
| 1 | Instant non fat milk | | |

THUMB PRINT

ALL SALES ARE FINAL

SIGNATURE

DO NOT TEAR! LEAVE FULL LENGTH!
ALL SALES FINAL! NO EXCHANGE!

Albert Turner
NAME
12 B-D-45
LOCATION

999565
NUMBER
08 -21-14
DATE

SO-7 (Rev. 2/86)

# COMMISSA
SLIP MUST BE FIL

| QTY | ITEM-DESCRIP |
|-----|--------------|
| 1 | Cocoa Butter |
| 1 | Socks-Black |
| 1 | Baked salt & p |
| 4 | Whole jalapen |
| 2 | Stamp Forev |
| 1 | plantation Best |
| 6 | Orange Juice |
| 7 | Primrose ha |
| 2 | Butterscotch |

DO NOT
ALL SAL

Albert Turner
NAME
12 8-D-45
LOCATION

SO-7 (Rev. 2/86)

Commissary & Trust Fund
POLUNSKY UNIT "B"
Commissary Purchase Receipt

Date: 5/25/14
Time: 7:38:57
Page: 1

Location...: 0542 - 0E
Salesperson: SA000066

Housing: 12-B-D ROW-1 CELL45
Begin Spend Limit: $50.85

Purchaser: TURNER,ALBERT JAMES
ID Number: 000999565

Beginning Account Balance: $50.85    Spend Limit

| Item Number | Item Description | Unit Price | Quantity | Ext.Amt | Class | Spend Limit |
|---|---|---|---|---|---|---|
| 00910 | STAMP 1.15 | 1.15 | 12 | 13.80 | CORR | $50.00 |
| 01042 | STAMP-FOREVER | .49 | 2 | .98 | CORR | $46.50 |
| 09720 | *FLOUR TORTILLA 12 PK | .85 | 1 | .85 | REGU | $44.65 |
| 51035 | T+KOSHER-INS,CHILI 6 OZ | 1.75 | 2 | 3.50 | REGU | $43.35 |
| 05305 | CORN CHIPS 16 OZ | 1.65 | 1 | 1.65 | REGU | $33.65 |
| 08092 | JALAPENO PEPPER CHIPS # 105i | 1.50 | 1 | 1.50 | REGU | $33.65 |
| 00229 | *CREAMY PEANUT BUTTER 18 OZ | 1.85 | 2 | 3.70 | REGU | $29.25 |
| 00160 | ORANGE JUICE 11.5 OZ | .60 | 10 | 6.00 | REGU | $26.85 |
| 01116 | PRIMROSE HARD CANDY | 2.20 | 2 | 4.40 | REGU | $26.10 |
| 00766 | BABY POWDER 15 OZ | 1.00 | 1 | 1.00 | REGU | |
| 00119 | ANTIPERSPIRANT 3 OZ MENNEN | 2.15 | 1 | 2.15 | HIGH | |

Transaction Total: 35    $39.53

Sales Tax included in above amount:    $.48

Ending Account Balance:    $11.32    End Spend Limit:    $26.10

_____
SIGNATURE          THUMB PRINT

ALL SALES ARE FINAL

| QTY | ITEM-DESCRIPTION | PRICE |
|---|---|---|
| 1 | Jalapeno chips | |
| 1 | Corn chips | |
| 1 | Tortillo Flour | |
| 2 | Kosher ins chili | |
| 2 | stamp Forever | 0.4 |
| 12 | stamp 1.15 | |
| 2 | peanut Butter | |
| 10 | Orange Juice | |
| 2 | Primrose candy | |
| 1 | Baby Powder | |
| 1 | Maria cookies | |
| 1 | Antiperspirant Deoderant | |

DATE          TOTA

DO NOT TEAR! LEAVE FULL LENGTH
ALL SALES FINAL! NO EXCHAN

Albert Turner          99
NAME
12-BD-45          9-
LOCATION

SO-7 (Rev 2/86)

## AFFIDAVIT

STATE OF TEXAS          )
                                    )

COUNTY OF    POLK        )

BEFORE ME, the undersigned authority, personally appeared Christina Pierce, who, being duly sworn by me, deposed as follows:

"My name is Christina Pierce. I am of sound mind; capable of making this affidavit; and I am authorized to make this affidavit in the capacity herein state. I am personally acquainted with the facts herein stated."

"I am employed as the Mailroom Supervisor for the Texas Department of Criminal Justice ("TDCJ") Polunsky Unit located in Livingston, Texas, and do hereby certify that I am the custodian of mail records maintained in the regular course of business of the TDCJ."

"I have reviewed the records you have requested; and hereby certify that the attached copies of documents are true and correct copies of the original records now on file in my custody. I further certify that the records attached hereto are maintained in the usual and regular course of business at the TDCJ. The entries made and/or documents created were created at or about the time of the occurrence, or reasonable soon thereafter, by an employee or representative of TDCJ with knowledge of the act, event, condition, opinion, or diagnosis reflected in the records, and that such records are maintained on each and every offender confined here."

"Attached are copies of the records of offender **Turner, James TDCJ #999565** which were requested."

_Christina Pierce_
Christina Pierce, Affiant

SWORN TO AND SUBSCRIBED BEFORE ME on _8-14-14_ by the said Christina Pierce, to certify which witness my hand and seal of office.

_Henry Dennis Coker / Henry Dennis Coker_
Notary Public in and for the State of Texas

HENRY DENNIS COKER
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 06/14/2016
NOTARY WITHOUT BOND

# BUSINESS RECORDS
# AFFIDAVIT



USA FIRST-CLASS FOREVER

Polunsky Unit
Albert Turner #999565
3872 FM 350 south
Livingston Tx    77351-0580

Lillie Turner
4806 Betty Sue Terrace
Orlando FL   32808

Hi Worm

I hope you and the family are fine when this letter reaches you. Well I'm out of soap, deardenant & food. I also need a T-shirt & shower shoes. Although I know it's Back to school time, but I really need money because I'm hungry all the time, ~~and~~ I ~~~~ Also would like to here from some body every once and a while, please, worm! no one talks to me here. It's Really hard to fight depression under these circumstances. I wish someone would Tell me what's going on with! There family, my family or something please! It's depressing me More to even talk about this because I feel like I'm complaining, which I'm sure on some level I am. I Just don't want to come off sounding ungreatful for what you have already done for me, but fighting depression is Really difficult to say the least, So Not only I'm I falling in depression but I don't have enough food to develop an eating disorder

Well now that I've had some therapy. I guess

I'll read me some psalm '23'!


Well I'll sign off now

Sending my love to you

And the rest of family


plese send money soon


Love

pudgey!

# Exhibit H

No. 10-DCR-054233

| STATE OF TEXAS | ' | IN THE 268TH JUDICIAL |
| VS. | ' | DISTRICT COURT OF |
| ALBERT JAMES TURNER | ' | FORT BEND COUNTY, TEXAS |

## AFFIDAVIT OF BEN SIMPSON

My name is Ben Simpson. I am over the age of eighteen years and have personal knowledge of the facts stated herein, which are true and correct.

I became a certified peace officer in December 2009 and have over five years of experience as a peace officer. I am currently employed as an administrative sergeant with the Fort Bend County Sheriff's Office.

As part of my duties, I monitor the booking and registration requirements for telephone privileges at the Fort Bend County Jail. Upon his arrival at the jail on November 3, 2014, Inmate Albert Turner was completely uncooperative. Our Inmate Processing Unit was unable to take any new photos, fingerprints, get any paperwork signed, or complete an appropriate medical screening. Inmate Turner also refused to complete the new inmate telephone enrollment. That meant that if Inmate Turner used the correct PIN, he would be permitted to use the telephone system and the system would work, but the continuous voice verification part of the system would not function. Thus, if Inmate Turner got another inmate's 12-digit PIN somehow, the jail staff would not be able to identify Inmate Turner on

1

the call.

During the afternoon of Thursday, December 4, 2014, the jail staff deactivated Inmate Turner's phone account due to his continued refusal to register in the inmate telephone system with the understanding that we would reactivate his account if he chose to comply with our rules in the future. At approximately 1840 hours the same day, Inmate Turner was escorted to booking and registered his phone. Inmate Turner returned to his cell with no issues and was allowed to use the rolling phone.

Signed on January ____9____, 2015.



Ben Simpson

BEFORE ME, the undersigned authority, this day personally appeared Ben Simpson and by oath stated that the facts herein stated are true and correct.

SWORN TO AND SUBSCRIBED BEFORE ME before me on this day January____9th____, 2015.

_____
Notary Public in and for the State of Texas
My commission expires:

ELAINE ACEDO
Notary Public, State of Texas
My Commission Expires
February 14, 2018

2